IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

JAMES SENTY and CATHERINE SENTY,

                        Plaintiffs,                              OPINION and ORDER

        v.

UNITED STATES OF AMERICA,                                        22-cv-283-wmc

                        Defendant.

Plaintiff James Senty ("James") is involved in several businesses, including gas companies, banks, and a surveillance camera company. In 2014 and 2015, his wife and fellow plaintiff, Catherine Senty, and he filed joint tax returns showing investment income from some of these companies. After the IRS audited plaintiffs for those years, however, it determined that they owed net investment income tax ("NIIT") on some of their investment income. The Sentys paid the NIIT assessed under protest, then later filed refund claims on the ground that Treasury regulations exempted their investment income because James Senty "materially participated" in three companies producing assessed income. In response, the IRS refunded the NIIT that the Sentys paid for 2014, plus interest, but refused to refund their 2015 NIIT. The Sentys filed this lawsuit to obtain a refund the 2015 NIIT, prompting the United States to file a counterclaim seeking return of the 2014 refund on the ground that James did not in fact "materially participate" in any of the three businesses for either year.

Before the court is plaintiffs' motion for leave to file an amended complaint that adds a new ground for a refund. (Dkt. #28.) That motion will be denied because the Sentys failed to present that argument to the IRS before filing suit. The government's motion to file a surreply in opposition to that motion (dkt. #53) will also be denied as unnecessary. Finally,

before the court is the plaintiffs' motion for summary judgment, in which they argue that there is no genuine dispute of material fact regarding James having materially participated in the three companies at issue. (Dkt. #31.) That motion will be denied, however, because the Sentys have failed to prove James' material participation by "reasonable means," at least as required by the tax code. Still, the court will give plaintiffs an opportunity to provide any additional, contemporaneous evidence they may have regarding James' material participation in the three companies, understanding that if they fail to submit adequate evidence, judgment may be entered for the government. *See* Fed. R. Civ. P. 56(f).

UNDISPUTED FACTS[1]

**A. James Senty's Business Dealings**

Plaintiff James Senty is a businessman who is involved in several companies, including in leadership positions as both a consultant and investor. Specifically, James has been: president of Midwest Gas Companies; director and vice president of Midwest Natural Gas; president of Midwest Bottle Gas of Minnesota; president of True Gas of Florida; director and chairman of the board of Park Bank; president of Park Bank's holding company, Park Bancocorporation; sole manager for Park Capital, LLC, which is the sole shareholder of Park Capital Holdings I, LLC; president of Deerfield Financial Corporation, which is sole shareholder of the Bank of Deerfield; and a board member for Reconyx, Inc. He also helps manage apartment buildings, as well as owns and works on farms in Wisconsin and Minnesota.

---

[1] Except where noted, the following facts are undisputed as drawn from the parties' proposed findings of fact and responses when viewed in the light most favorable to defendant, as the nonmoving party.

2

In 2014 and 2015, the years relevant to this case, James worked approximately 65 to 70 hours each week.  However, he did not maintain a work calendar, appointment book, log, journal, time sheet or any other document to keep track of the hours or type of work he performed for any particular entity.  He also rarely used email or text messages for work, preferring to conduct business face-to-face or by telephone, though here, too, he purports to have no phone records substantiating the amount of time he spent making work-related calls. With respect to the three companies at issue in this case in particular -- Deerfield Financial Corporation ("DFC"), Reconyx, Inc. and Park Capital, LLC -- James estimates that he spent more than 100 hours, but less than 500 hours working for each company in both 2014 and 2015.

### 1.  DFC and Bank of Deerfield

In 2014 and 2015, James Senty was president of DFC and his son, Paul Senty, was director and vice president.  Paul Senty was also director and the chair of the board of DFC's subsidiary, the Bank of Deerfield.  James asserts that he spent more than 255 hours working for DFC and the Bank of Deerfield in 2014 and 2015.  During that time, he further avers that he performed the following types of services:

- consulting with DFC's and the Bank of Deerfield's management teams regarding ongoing business concerns, new business opportunities and customer relations;

- reviewing and examining financial statements and other materials, in preparation for DFC and the Bank of Deerfield board meetings, attending board meetings and setting annual and monthly goals for the companies;

- monitoring performance of the Bank of Deerfield directors and addressing other issues with senior and administrative employees;

- participating in the certification and management of the Small Business Lending Fund program;

- working with governmental organizations regarding the relocation of Highway 12-18 and its impact on a Bank of Deerfield branch office;
- individually guaranteeing loans formerly financed through the Small Business Lending Fund program;

- establishing DCF's dividend amounts and distribution;

- meeting with federal and state bank regulators regarding examinations of DFC and the Bank of Deerfield;

- attending bank director conferences and meetings of the Independent Community Bankers of America to improve the overall performance of the Bank of Deerfield;

- attending director and compliance training for officers and directors of DFC and the Bank of Deerfield; and

- monitoring major issues in loan examinations.

In coming up with this list of services, James purports to have relied on his own memory and that of his son, Paul Senty, to support the assertion that these activities comprised at least 255 hours in both 2014 and 2015. Hover, he offers *no* documentary evidence from either year to corroborate the time he spent, except for a self-serving employment agreement that he did not sign until two years later in 2017, which obligated him to provide at least 255 hours of management services to DFC per year. (Dkt. #33-7.) The agreement also states that these services shall be provided "in a manner consistent with historical practices." (*Id.* § 1.1) James is the *only* signatory on the agreement, which he signed both in his capacity as president of DFC and as an employee of DFC.

## 2.  Reconyx, Inc.

Jim Senty was also an early investor in Reconyx, Inc., which sells a variety of surveillance equipment and trail cameras.  In 2014 and 2015, he served on the board of directors for the company and avers that he spent more than 276 hours working for Reconyx in each of those years, performing the following types of services:

- consulting with members of the management team for Reconyx regarding ongoing business concerns, new business opportunities, business strategies, technology transitions, strategic parts inventory management, bank lines of credit, managing balance sheet equity and other issues impacting the day-to-day operations of Reconyx;

- preparing for and attending board meetings, including reviewing and examining financial statements, sales targets, employee bonus plans and providing strategic and engineering guidance regarding potential software and hardware strategies;

- field testing of Reconyx cameras and equipment, including working on both potential new technology and camera improvements;

- evaluating potential technological advancements and components of cameras;

- developing cell phone and Wi-Fi product lines of cameras;

- assisting with the opening of the Australian market for Reconyx; and

- providing international connections about the possible use of Reconyx's cameras at the Rio 2016 Olympics.

In October 2016, James signed an employment agreement with Reconyx, which obligated him to provide at least 276 hours of service to DFC per year.  (Dkt. #33-9.)  Like the agreement he signed with DFC, that agreement states James shall provide services "in a manner consistent with historical practices."  (*Id.* § 1.1.)

**3.  Park Capital, LLC**

In 2014 and 2015, James Senty was the sole manager for Park Capital, LLC, which owned 100% of Park Capital Holdings I, LLC.  During those years, he avers to having provided the following services to Park Capital, LLC:

- succession planning;

- discussions with successor manager Paul Senty regarding day-to-day management of Park Capital, LLC; and

- developing, financing, constructing and leasing a Verona building to Park Bank.

In addition to his work with Park Capital, LLC, James avers that he spent more than 500 hours working on Park Bank and Park Bancocorporation matters in both 2014 and 2015.

**B.  Plaintiffs' Joint Tax Filings and Refund Requests for 2014 and 2015**

James Senty jointly filed federal tax returns with his wife Catherine for the years 2014 and 2015.  The IRS conducted a tax audit of the Sentys' federal tax returns for both years and determined that the Sentys owed a 3.8% NIIT on certain of their net investment income under 26 U.S.C. § 1411.  In August 2021, the Sentys paid this NIIT under protest in the amounts of $101,097 for 2014 and $105,354 for 2015.

In November 2021, the Sentys then filed amended federal income tax returns for 2014 and 2015, seeking to reduce the amount of their net investment income subject to NIIT for both years.  The 2014 and 2015 refund claims reported substantial reductions (more than $2.5 million for each year) in the amount of the Sentys' income subject to NIIT based on James' purported involvement in DFC, Reconyx and Park Capital LLC.  Accordingly, the Senty's requested a refund of the NIIT already paid plus interest.

6

In June 2022, the IRS issued a refund to the Sentys in the amount of $133,497.81 for the additional NIIT assessed and paid for 2014, plus interest, but denied any refund for the Sentys' 2015 amended tax return.  In May 2022, the Sentys then filed this lawsuit to obtain a refund of the additional NIIT assessed by the IRS for tax year 2015.  In response, the government counterclaimed for a return of the 2014 refund already issued.

In July 2023, the Sentys also filed a new set of amended federal tax returns for 2014 and 2015.  In addition to the reasons described in their previous amended returns, the Sentys represented in these second amended returns that the amount of net investment income subject to NIIT should be further reduced because rental income they received in 2014 and 2015 from Park Capital, LLC/Park Capital Holdings I, LLC was not subject to NIIT at all.  In August 2023, the Sentys filed a motion for leave to amend their complaint in this case to include this new argument as an alternate tax position.

OPINION

As set forth above, plaintiffs' claim for a refund of the additional NIIT paid under protest for 2014 and 2015 tax years turns largely, if not entirely, on their contention that James Senty "materially participated" for each of those years in the activities of three companies -- Deerfield Financial Corporation, Reconyx, Inc., and Park Capital, LLC.  If so, the income earned from these three companies would not be subject to the additional 3.8% NIIT assessed under 26 U.S.C. § 1411.  The court will first discuss the applicable statutes and Treasury regulations, then apply those laws to plaintiffs' claim.  The court will also take up plaintiffs' motion to add new refund theories to this case.

## I.   NIIT and Material Participation

The tax at issue in this case imposes a 3.8% tax "net investment income."  26 U.S.C. § 1411(a)(1).  Although a classic piece of legislative sausage making, "net investment income" is generally defined for purposes of determining NIIT as any excess sum of: (1) "gross income from interest, dividends, annuities, royalties, and rents," except as "derived in the ordinary course of a trade or business"; (2) "other gross income derived from a trade or business through a passive activity"; (3) gross income derived from a trade or business by "trading in financial instruments or commodities"; and (4) "net gain ... attributable to the disposition of property in such an activity or a trade or business," minus certain deductions which are allocable to such gross income or net gain.  *Id.* § 1411(c)(1).  A trade or business qualifies as a "passive activity" subject to the NIIT if the taxpayer does not "materially participate" in that trade or business. *Id.* § 1411(c)(2)(A); 26 U.S.C. § 469(c).

Treasury regulations further provide 7 tests by which a taxpayer can show "material participation" in an activity.  26 C.F.R. § 1.469-5T(a)(1)–(7).  In their first amended tax returns for 2014 and 2015, and in their original complaint in this case, plaintiffs relied on only one of those tests:  the combined "significant participation activity" test set forth in 26 C.F.R. § 1.469-5T(a)(4).  Specifically, plaintiffs offered as "significant participation activity" those services in which James Senty purported to have engaged for more than 100 hours in each year to the extent not otherwise qualifying as material participation under any other provision.  26 C.F.R. § 1.469-5T(c)(1)(i), (2).

To demonstrate material participation under the "significant participation test" in § 1.469-5T(a)(4), a taxpayer must prove that that his or her "aggregate participation in all significant participation activities during such year exceeds 500 hours."  *Id.*  "Taxpayers

8

therefore meet this definition if they spend just enough (over 100 hours) but not too much (less than 500 hours) time participating in an activity.  This test is a way to aggregate participation in activities that keep taxpayers busy but not too busy." *Brown v. Comm'r of Internal Revenue*, No. 26090-13, 2019 WL 2423981, at *13 (T.C. June 10, 2019).  Put another way, § 1.469-5T(a)(4) "enables a taxpayer who does not devote 500+ hours to any one activity during the year to satisfy the 'material participation' test by cobbling together several smaller activities, to each of which he devotes 100+ hours during the year." *Brumbaugh v. Comm'r of Internal Revenue*, No. 9161-14, 2018 WL 1611827, at *6 (T.C. Apr. 3, 2018).

Treasury regulation section 1.469-5T(f)(4) further explains *how* a taxpayer may prove participation in such activities:

> The extent of an individual's participation in an activity may be established by any reasonable means. Contemporaneous daily time reports, logs, or similar documents are not required if the extent of such participation may be established by other reasonable means. Reasonable means for purposes of this paragraph may include but are not limited to the identification of services performed over a period of time and the approximate number of hours spent performing such services during such period, based on appointment books, calendars, or narrative summaries.

26 C.F.R. § 1.469-5T ("Methods of proof.")  "While the regulations permit some flexibility with respect to the evidence required to prove material participation, [tax courts] are not required to accept postevent 'ballpark guesstimates,' nor are we bound to accept the unverified, undocumented testimony of taxpayers." *Bartlett v. Comm'r,* No. 19031-11, 2013 WL 4033868, at *3 (T.C. Aug. 8, 2013); *see also Gragg v. United States*, No. 12-CV-3813 YGR, 2014 WL 1319686, at *9 (N.D. Cal. Mar. 31, 2014), aff'd, 831 F.3d 1189 (9th Cir. 2016) ("The Tax Court has long and consistently held that backwards-looking 'post-event ballpark guesstimates,' unsupported by reliable and contemporaneous records, do not suffice as a

'reasonable means' of demonstrating the scope of one's participation in an activity pursuant to section 469.") (collecting cases).  Similarly, "assign[ing] hours to activities years later, and in preparation for trial, based solely on [the taxpayer's] judgment and experience as to how much time the activities must have taken" does not qualify as "reasonable means."  *Bailey v. Comm'r of Internal Revenue*, No. 3293-00, 2001 WL 1360438, at *6 (T.C. Nov. 7, 2001).

## II.     James Senty's "Proof" of his Significant Participation Activities

Plaintiffs contend that James spent at least 100 hours, but less than 500 hours, working for DFC, Reconyx, Inc. and Park Capital, LLC in both 2014 and 2015.  As just discussed, however, Treasury regulations require plaintiffs to establish Senty's participation in those activities through "reasonable means," rather than self-serving after-the-fact "ballpark guesstimates."  26 C.F.R. § 1.469-5T(f)(4).  Here, as evidence to establish James Senty's participation, plaintiffs rely on four sources: (1) the post hoc employment agreements Senty signed with Reconyx and DFC in 2016 and 2017, respectively; (2) contemporaneous board meeting minutes from a single 2014 DFC directors meeting, a single 2015 Bank of Deerfield meeting, a single 2014 Reconyx meeting and a single 2015 Reconyx meeting; (3) James Senty's own deposition testimony about the work he performed; and (4) deposition testimony of his family and friends.  Even considered as a whole, this evidence does not appear to qualify as "reasonable means" sufficient to establish Senty's "significant participation" in any of the three companies at issue under 26 U.S.C. § 1411(a)(1), 26 C.F.R. § 1.469-ST(f)(4).

To begin, the post-event employment agreements Senty signed with Reconyx and DFC do nothing to substantiate the hours James Senty now purports to have worked for either company in 2014 and 2015.  If anything, they appear to be an obvious effort to "paper over"

a lack of any meaningful, contemporaneous records of James' actual activities.  Thus, the agreements are not reasonably meaningful evidence of his actual work.  In particular, language in the agreements obligating James to work 276 and 255 hours in future years "consistent with historical practices," as well as testimonial evidence, appear to be a rather blatant, post-hoc attempt to document the hours Senty worked.  Moreover, while the agreements are purportedly between distinct companies: (1) the headings, structure and language of the provisions, including the "historical practices" language, are nearly identical; (2) James Senty is the only signatory on the DFC agreement; and (3) Thomas Stegner, the CEO and chairman of the board of directors of Reconyx, testified at his deposition that he "honestly [did] not know where that number [276 hours] came from."  (Stegner Dep. (dkt. #39) 51.)

Similarly, the handful of board meeting minutes submitted by plaintiffs also does not provide "reasonable means" proof of James Senty's actual, significant participation in any of the three companies.  Indeed, attending one meeting for DFC in 2014, one meeting for Bank of Deerfield in 2015, and one meeting for Reconyx in each of those years does little to prove that Senty worked more than 100 but less than 500 hours for each of those companies.

As for James Senty's own testimony about the number of hours he participated in the three entities, it is simply too vague and conclusory to satisfy the "reasonable means" requirement.  Although Senty provides a superficial summary of activities he participated in for each company during 2014 and 2015, he provides few details about how many hours he spent participating in any of those activities.  James also concedes that he has no documents to substantiate his claimed hours, nor did he retain any notes, logs, calendars, appointment books, phone records, emails or anything else to provide a basis for his method of calculating or reconstructing his claimed hours of participation in any of the three companies.  *See Sellers*

11

*v. Comm'r of Internal Revenue*, 119 T.C.M. (CCH) 1571, 2020 WL 3182739, at *6 (T.C. 2020) ("When a taxpayer does not provide evidence to support his or her testimony, we struggle to find material participation.")  Such vague testimony constitutes the type of "post-event ballpark guesstimates" based solely on a taxpayer's "judgment and experience as to how much time the activities must have taken" and are insufficient as a matter of law.  *Bartlett*, 2013 WL 4033868, at *3; *Bailey*, 2001 WL 1360438, at *6; *see also Ernest S. Ryder & Assocs., Inc., APLC v. Comm'r of Internal Revenue*, 122 T.C.M. (CCH) 25, 2021 WL 2948640, at *55 (T.C. 2021) ("[W]e don't have to accept unverified, undocumented testimony about how a taxpayer spent her time.") (citations omitted).

Finally, plaintiffs' other witnesses fail to meaningfully substantiate James' claimed hours.  Although his son, Paul Senty, the vice president of DFC and chair of the board of directors for Bank of Deerfield, provided testimony about the sort of work his father provided for DFC, Paul also provided no basis for his method of estimating how much time James actually spent doing such work.  Nor do plaintiffs' other witnesses:  James Hegenbarth, a son-in-law and director at DFC, and Thomas Stenger, James Senty's longtime friend and CEO of Reconyx.  Although these witnesses testify that James provided a significant amount of consulting and other help to their companies in 2014 and 2015, they, too, provide no explanation of the method used or documents relied upon to substantiate plaintiffs' assertions regarding the amount of time James actually spent on any of the three companies in 2014 and 2015.  *See Sellers*, 2020 WL 3182739, at *6 (finding insufficient evidence from witnesses who "gave vague testimony and either guessed how much time they spent on each activity or provided no timeframe at all"); *Bartlett*, 2013 WL 4033868, at *5 ("lack of records and documentation is not cured by estimates made years after the fact in writing or by testimony")

12

Plaintiffs contend that their evidence is similar to that accepted by courts to establish "material participation," citing a handful of cases, and relying in particular on *Tolin v. Comm'r*, No. 17318-08, 2014 WL 1386624, at *11 (T.C. Apr. 9, 2014).   Plaintiffs contend that their evidence is equivalent to that provided in *Tolin*, but their evidence falls short of that accepted as sufficient in other cases.   For example in *Tolin*, the taxpayer "introduced a narrative summary in which he describes the work he performed … and estimates the time he spent performing such work," using "telephone records, credit card invoices, and other contemporaneous materials." *Id.* The taxpayer's summary identified specific activities and hours worked on each, and was further supported by "comprehensive stipulations of fact" between the parties, "a significant amount of credible third-party witness testimony" and other "objective evidence" of his activities. *Id.*   In contrast, plaintiffs have not attempted to identify the specific number of hours James spent on specific tasks, and have provided no contemporaneous evidence, such as phone records, flight and travel records or credit card receipts.

In sum, it is not enough for plaintiffs to submit evidence showing that James Senty was a hardworking businessman and involved in the three companies at issue during 2014 and 2015.   Plaintiffs must submit reliable evidence establishing the amount of time James actually spent on his activities for those companies and have failed to do so.   *See Ackerman v. Comm'r*, 97 T.C.M. (CCH) 1392, 2009 WL 1010861, at *36 (T.C. 2009) (taxpayer failed to establish material participation because, although he submitted evidence that he worked on "various matters, including the business operations and finances" of the subject company, "we have not found any reliable evidence in the record establishing the amount of time that [the taxpayer] spent [on those activities] during each of the years").   Thus, although they will be given an opportunity to do so under Rule 56(f), plaintiffs have so far failed to meet their burden of

13

establishing that Senty "significantly participated" in any of the three business for more than 100 hours but less than 500 hours in 2014 or 2015, such that James could be found to have materially participated in those businesses under § 1.469–5T(a)(4). Failing that, plaintiffs' net investment income from those businesses will not be excluded from the NIIT for those two years.[2]

### III.    Plaintiffs' Alternate Tax Theories

In the amended tax returns for 2014 and 2015 that plaintiffs filed in November 2021, before filing this lawsuit, plaintiffs sought a refund of their NIIT assessments on the ground that James Senty materially participated in the business activities of DFC, Reconyx, Inc., and Park Capital, LLC. Now, in their motion for summary judgment, plaintiffs raise two new theories as to why they should be allowed to reduce the amount of net investment income subject to NIIT, particularly as attributed to Park Capital, LLC.

First, plaintiffs contend that the only income Park Capital, LLC/Park Capital Holdings I, LLC generated in 2014 and 2015 was derived from rental of a building to Park Bank in Verona, Wisconsin, and that this income is not subject to NIIT under 26 C.F.R. § 1.469-2(f)(6) if "rented to a nonpassive activity," like a commercial enterprise such as a bank. Plaintiffs

---

[2] The government also argues that many of Senty's activities were performed in his capacity as an investor in the three companies at issue, and thereby do not qualify as "significant participation activities" under Treasury regulations. *See* 26 C.F.R. § 1.469-5T(f)(2)(ii)(A) ("Work done by an individual in the individual's capacity as an investor in an activity shall not be treated as participation in the activity … unless the individual is directly involved in the day-to-day management or operations of the activity."); *Householder v. Comm'r of Internal Revenue*, 116 T.C.M. (CCH) 219 (T.C. 2018) ("[R]eading, talking, and thinking" don't count as material participation if other people are doing the actual work.") The court need not address this issue, however, unless plaintiffs can carry their burden of establishing that during each of their taxable years 2014 and 2015 Senty participated in any of the businesses for more than 100 and less than 500 hours.

14

included this new theory in the amended federal tax returns they filed in July 2023, as well as in their motion for leave to file a second amended complaint.  Second, plaintiffs contend that the IRS should treat all the Park Bank entities (including Park Capital, LLC, Park Capital Holdings I, LLC, Park Bank, and Park Bancocorporation) as an "appropriate economic unit" for tax purposes, and because James Senty worked more than 500 hours for all the Park Bank entities combined in 2014 and 2015, he satisfies the exemption in 26 C.F.R. § 1.469-4(c)(1), for materially participating in a single activity by "participat[ing] in the activity for more than 500 hours during such year."

However, plaintiffs cannot raise these new arguments in court without first presenting them in a refund request to the IRS.  As the Seventh Circuit has explained, "[a]n essential element of the revenue system is the power Congress has given the IRS to resolve [] problems internally through reasonable procedures of the agency's design." *Goldberg v. United States*, 881 F.3d 529, 532 (7th Cir. 2018) (citing 26 U.S.C. §§ 7422(a), 7433(d)(1) (requiring exhaustion of administrative remedies before filing suit)).  Only taxpayers who have filed timely refund claims with the Secretary of the Treasury may sue the government for tax refunds in federal court. *Id.*; *see also Nick's Cigarette City, Inc. v. United States*, 531 F.3d 516, 520 (7th Cir. 2008). The refund claim must "*set forth in detail each ground* upon which a credit or refund is claimed and *facts sufficient to apprise the Commissioner of the exact basis thereof*." 26 C.F.R. § 301.6402-2 (emphasis added).

Thus, when the IRS denies a taxpayer's refund claim, the taxpayer is limited in subsequent litigation to the grounds contained in the refund claim by the "substantial variance doctrine." *Blakely v. United States*, 593 F.3d 1337, 1342 (Fed. Cir. 2010); *see also Charter Co. v. United States*, 971 F.2d 1576, 1579 (11th Cir. 1992) (explaining that only "grounds fairly

contained within the refund claim" may be raised in a refund suit). This prevents surprise and gives adequate notice to the government of the claim and specific facts, allowing for an administrative investigation. *Computervision Corp. v. United States*, 445 F.3d 1355, 1363 (Fed. Cir. 2006). Indeed, "[f]ederal courts have no jurisdiction to entertain taxpayer allegations that impermissibly vary or augment the grounds originally specified by the taxpayer in the administrative refund claim." *Charter*, 971 F.2d at 1579; *see also Green-Thapedi v. United States*, 549 F.3d 530, 533 (7th Cir. 2008) ("a district court lacks jurisdiction over a refund claim that has not first been filed with the IRS"); *Green v. United States*, 880 F.3d 519, 532 (10th Cir. 2018) ("Any legal theory not expressly or impliedly contained in the application for refund cannot be considered by a court in which a suit for refund is subsequently initiated.")

In this instance, the IRS had no notice of and has not yet addressed plaintiffs' new rental-income or single-economic-unit theories through the administrative refund process. Specifically, on July 19, 2023, more than a year after filing this lawsuit, plaintiffs mailed new amended returns to the IRS raising the rental theory as an "alternate tax position," and they did not raise their single-entity theory until filing their summary judgment motion. Both theories rest on different provisions in Treasury regulations -- 26 C.F.R. § 1.469-5T(a)(1) and 26 C.F.R. § 1.469-2(f)(6) -- and involve facts about different entities, none of which the IRS had the opportunity to investigate administratively. Accordingly, these late theories do not satisfy the requirement that a refund claim be presented to the IRS detailing "each ground upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof." 26 C.F.R. § 301.6402-2. Both tax regulations and the variance doctrine preclude this type of end run, and in particular, the filing of amended returns with the IRS after filing a suit for refund. *See Logan v. United States*, 2018 WL 3067892, at *5 (M.D.

16

Fla. 2018) (rejecting amended refund claim because taxpayer "must first afford the IRS an opportunity to consider the arguments in the Amended Claim before asserting them in his Amended Complaint."); *see also Green*, 880 F.3d at 532 ("As the government correctly notes, the Trust's refund claim made no mention of its § 512(b)(11) legal theory. We therefore agree with the government that the § 512(b)(11) arguments … constitute a substantial variance of the legal component of the refund claim filed with the IRS. These arguments are thus barred").

In response, plaintiffs argue that their alternative theories are not a "substantial variance" from their original refund claim, because the theories fall within the same set of Treasury regulations relating to material or significant participation or to rental income from properties rented to related active trades or businesses.  Still, plaintiffs cite *no* legal authority supporting this argument, particularly after already requesting a refund under a related, but distinct tax provision, without first giving the IRS the opportunity to consider whether that tax provision applies to the taxpayer's situation.  Regardless, the court agrees that although plaintiffs' new alternative tax theories are methods to avoid paying NIIT on certain business income, the new theories require proof of a completely different set of facts regarding (1) plaintiffs' rental income, (2) whether Park Bank and Bancorporation should be considered the same economic unit as Park Capital, LLC, and (3) whether James Senty spent more than 500 hours in both 2014 and 2015 working for this Park Bank "unit."  Because plaintiffs did not give the IRS the opportunity to assess those facts, their new theories constitute a substantial variance.

Finally, plaintiffs contend that the IRS waived the substantial variance defense because they gave the government notice of its new theories in July 2023.  However, the "waiver doctrine" applies only if, despite a taxpayer not raising a specific claim, the IRS considers that

17

specific claim" *during administrative proceedings*. *Heger v. United States*, No. 11-134T, 2012 WL 171897 (Fed. Cl. Jan. 20, 2012). Specifically, waiver applies: "when (1) there is clear evidence that the Commissioner understood the claim that was made, even though there was a departure in form in the submission; (2) it is unmistakable that the Commissioner dispensed with the formal requirements and examined the claim; and (3) the Commissioner took action upon the claim." *Brown v. United States*, 22 F.4th 1008, 1013 (Fed. Cir. 2022). In this instance, none of this occurred in administrative proceedings. Accordingly, because plaintiffs failed to present these new grounds for a refund to the IRS before filing their lawsuit, the court lacks jurisdiction to consider them.

ORDER

IT IS ORDERED that:

1) Plaintiffs' motion for leave to file an amended complaint (dkt. #28) is DENIED.

2) Defendant's motion for leave to file a surreply (dkt. #53) is DENIED.

3) Plaintiffs' motion for summary judgment (dkt. #31) is DENIED.

4) Plaintiffs may have until January 16, 2024, to submit any additional evidence to the court to prove the number of hours he worked for Deerfield Financial Corporation, Reconyx, Inc. and Park Capital, LLC in 2014 and 2015.

5) In light of this opinion and order, the trial date and all other remaining dates are STRUCK.

Entered this 15th day of December, 2023.

BY THE COURT:
/s/
WILLIAM M. CONLEY
District Judge